JUSTICE RICE,
concurring.
¶44 I concur with the Court’s determination under Issue 1 that Patches stated a legally valid claim. H&B argues that § 27-1-719, MCA, limits product liability claims to “users and' consumers” of the product, and does not extend to bystanders. Because, as the Court reasons, “all of the players, including Brandon, were users or consumers” in the context of a baseball game, Opinion, ¶ 17, the statute is facially broad enough to encompass Patches’ claim under strict products liability law.
¶45 While I concur that Patches have stated a legally valid claim, I remain troubled by the evidentiary basis for the failure to warn claim. Patches did not articulate specifically what a warning should have contained and what message should have been given. Statements to the effect that the bat would hit balls at unusually fast speeds or unusually far distances are the kind of messages accompanying usual product advertising and are precisely the qualities in a bat which baseball teams and players seek out. Neither did Patches articulate specifically how a warning would have changed the result here, in other words, how the failure to warn caused this accident. During oral argument before this Court, when Patches’ counsel was asked to articulate Patches’ theory of causation-or how a warning would have prevented the accident-he was vague, offering only what the jury may have concluded.
*252 ¶46 The closing argument Patches made to the jury seemed to reflect the stretch which they asked the jury to make:
They don’t have warnings on these bats. There’s nothing said on these bats about what these bats can do. And that your child, whether he’s 15,16,17,18,19-if your child is playing and he’s a pitcher, he could be killed, as what happened here July 25, 2003.
Now I ask you this-I ask you-all this: If you had a child 17 or 18 years old and he wanted to be a pitcher and the bat that the kid was bringing up to the plate warned-warned-that this bat could kill-Mr. [a]nd Mrs. Patch didn’t have the benefit of any warning.
Patches’ apparent theory, as articulated in closing argument, was that H&B should have advertised that its bat “could kill,” or that players engaged in the game of baseball “could be killed” if their bat was used. As alluded to in testimony, the inference which Patches asked the jury to draw in order to establish causation was that, following the publishing of a warning “that this bat could kill,” they as parents would have, and could have, prohibited Brandon from playing baseball that day.
¶47 As the Court notes, “the ‘workability’ of providing a warning is a jury question.” Opinion, ¶¶ 19, 21. There is no doubt that the jury in this case was given a difficult task. Because the law gives to the jury the duty of determining whether the plaintiff presented a viable theory of warning and causation in this case involving a baseball bat, I defer to the jury’s judgment and likewise affirm their verdict.